Marc Windtberg (SBN 024802)
mw@wlawaz.com
**WINDTBERG LAW, PLC**
7600 North 15th Street, Suite 150
Phoenix, AZ 85020
Telephone: (602) 753-0706

Farhad Novian (SBN 118129) (*pro hac vice pending*)
farhad@novianlaw.com
Jared C. Xu (SBN 314646) (*pro hac vice pending*)
jaredx@novianlaw.com
**NOVIAN & NOVIAN, LLP**
1801 Century Park East, Suite 1201
Los Angeles, CA  90067
Telephone: (310) 553-1222
Facsimile: (310) 553-0222

Attorneys for Paragon Technology & Development, Inc.
and Gatsby Enterprises, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Paragon Technology & Development, Inc., a Delaware corporation; Gatsby Enterprises, Inc., a California corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> Robert Lunny and Victoria Barrett, husband and wife, and DOES 1 – 10, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT** |

Plaintiffs PARAGON TECHNOLOGY & DEVELOPMENT, INC. ("Paragon") and GATSBY ENTERPRISES, INC. ("Gatsby," collectively with Paragon, "Plaintiffs")

hereby complain against Defendants ROBERT LUNNY ("Lunny"), VICTORIA BARRETT, and DOES 1-10 as follows.

## NATURE OF THIS ACTION

1. This action arises from a litany of malfeasance, defalcations, negligence, and sheer ineptitude committed by an individual who was entrusted with sensitive information and important responsibilities. Rather than serving his employer and company honorably and diligently, Lunny betrayed Paragon's trust and utterly failed in his duties. Lunny acted as a "mole" for TO BE LIMITED PARTNERSHIP ("TBL"), a minority shareholder in Paragon. Indeed, TBL handpicked Lunny, who it touted as having significant executive and financial experience, to serve as Paragon's Chief Operating Officer/Chief Financial Officer ("CFO/COO"), and insisted he be appointed as one of three directors of Paragon. Once ensconced in the management and direction of the company, Lunny exhibited neither loyalty nor diligence towards Paragon, failing to perform even rudimentary tasks, being responsible for a data breach, embezzling corporate funds, and feeding false and prejudicial information to TBL. Although Lunny was eventually terminated for cause, Plaintiffs are still experiencing the negative effects of his short and disastrous tenure, and will experience these effects for years to come.

## THE PARTIES

2. Plaintiff Paragon is, and at all relevant times was, a corporation incorporated under the laws of Delaware and qualified to do business in California, with its principal place of business in Los Angeles County, California.

3. Plaintiff Gatsby is, and at all relevant times was, a corporation incorporated under the laws of California, with its principal place of business in Los Angeles County, California.

4. Defendant Lunny is, and at all relevant times was, a citizen of Canada. He is an alien lawfully admitted for permanent residence in the United States, and an

individual domiciled and residing in Maricopa County, Arizona.

5. Plaintiffs are unaware of the true names and capacities of the defendants named herein as VICTORIA BARRETT and DOES 1 through 10, inclusive, whether individual, corporate, associates, or otherwise and therefore sue defendants by fictitious names. Plaintiffs will seek leave of court to amend this Complaint to set forth the true names and capacities of said defendants if and when the same has been ascertained. Plaintiffs are informed and believe and thereon allege that DOES 1 through 10, inclusive, and each of them, are responsible in some manner for the wrongful acts, occurrences, and/or omissions alleged herein and for the damages caused to Plaintiffs.

6. Plaintiffs are informed and believe, and thereon alleges, that each of the defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to and caused damages thereby to Plaintiffs as herein alleged. Plaintiffs are informed and believe, and on such information and belief allege, that each defendant herein, in addition to acting for himself, itself and/or on his, her, or its behalf, individually, is, and at all relevant times was, acting as the agent, servant, employee and/or representative of and with the knowledge, consent and permission of each of the remaining defendants and within the course, scope and authority of said agency, service, employment and/or representation. Plaintiffs are further informed and believe, and on such information and belief allege, that the acts and conduct of each such defendant was fully ratified by each of the remaining defendants herein. Lunny, Victoria Barrett, and the defendants designated as DOES 1-10 shall be referred to collectively as "Defendants" where appropriate.

7. Defendants Robert Lunny and Victoria Barrett are, upon information and belief, husband and wife. All actions taken by Lunny related hereto were taken to benefit the marital community of Lunny and Victoria Barrett.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper under 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district. In the alternative, venue is also proper under 28 U.S.C. § 1391(b)(3), as Lunny is subject to the court's personal jurisdiction with respect to this action.

## PERSONAL JURISDICTION OVER LUNNY

10. This Court may exercise personal jurisdiction over Lunny for the reasons set forth below, as will be further discussed in the remainder of the Complaint:

    a. Lunny lived in both Arizona and Los Angeles, California during the length of his employment with Paragon. He is now domiciled in Arizona with TODD BELFER ("Todd Belfer"), a partner at Canal Partners, LLC in Scottsdale, Arizona and a principal of TO BE LIMITED PARTNERSHIP ("TBL"), minority shareholder in Paragon.

    b. Lunny thus has a sufficient relationship with Arizona and the litigation, as will be set forth in more detail in this Complaint, such that traditional notions of fair play and substantial justice are not offended by his defending against this action in Arizona federal court.

## BACKGROUND ALLEGATIONS

11. Paragon is a platform for online adult content that helps hundreds of independent contractor content creators earn livelihoods. Gatsby is a wholly-owned subsidiary of Paragon.

12. It is notoriously difficult for businesses in this industry to obtain traditional financing, such as through banks. Therefore, Paragon was forced to deal with HARVEY

BELFER ("Harvey Belfer"), a loan shark who profited handsomely by providing loans at extraordinarily high interest rates—*up to thirty (30) percent*—to Paragon. Harvey Belfer was able to maintain a level of separation and the veneer of respectability in his tiny Scottsdale, Arizona enclave by providing loans through TBL, thus ensuring that his neighbors and business associates did not know he was investing in pornography. Todd Belfer, Harvey Belfer's son, is a partner in TBL, along with Belfer's wife SANDRA BELFER and daughter BETH BELFER.

13. Todd Belfer and Harvey Belfer were involved in these usurious loans to Paragon.

14. These usurious loans were hugely profitable for TBL. They were also secured by personal guaranties, pledges of shares, and other collateral, which gave TBL legal means to influence and harass Paragon.

15. Harvey Belfer also repeatedly threatened Paragon director and officer Jude Hudson ("Hudson") throughout the course of their business relationship, including alluding to having Hudson's legs broken.

16. Eventually, Harvey Belfer "suggested" to Hudson that Paragon hire a CFO/COO to assist Hudson in running the company. This was not a suggestion, but a threat, as Harvey Belfer made clear he would withhold funding if Paragon did not hire Lunny.

17. In of itself, having experienced executives as part of the management team would be a positive; unfortunately, Harvey Belfer was not concerned with efficiency. Rather, Harvey Belfer demanded that Paragon install Lunny as CFO/COO to act as an "inside man" who could report back on Paragon's business operations and finances to Harvey Belfer and TBL.

18. Harvey Belfer further demanded that Lunny be appointed as a director of Paragon. Although Lunny was one of three directors, Hudson and his wife being the other

two, this position gave Lunny additional access to Paragon's financial records.

19. Lunny's first day of employment with Paragon was March 1, 2019.

20. Prior to Lunny's employment with Paragon, Paragon had operated with a financial controller and an independent accounting firm.

21. Almost immediately, Lunny demonstrated a lack of responsibility and diligence. Within 60 days of hiring Lunny, Paragon became concerned over Lunny's work ethic. Lunny would routinely come into the office late—between 10 to 11 am—if he came in at all, as he would often "work remotely" from Arizona despite not having been authorized to do so. Paragon employees also reported seeing Lunny sleeping in his car in the parking garage at Paragon's office on more than one occasion.

22. Lunny was responsible for Paragon's human resources management program, and he either purposefully or negligently failed to record his own personal time off, although in ten months he took off approximately 17 days—more than any other employee.

23. Only after being forced into hiring Lunny did Paragon learn Lunny had no prior experience working for an e-commerce business, despite Paragon's business model being entirely internet based.

24. Unbecoming to an executive at a company and exposing Paragon to potential employment discrimination claims, Lunny made numerous racist and offensive comments at Paragon's offices, including a statement to a Paragon employee that "white men don't wear True Religion jeans" and that this employee (who is white) should show some "respect" or "pride" for his race, and insinuating that another employee was only good with finances because of his Asian heritage.

25. Paragon further learned that Lunny had previously worked for Vincent Benjamin Staffing, and had been separated from his management position at that company under questionable circumstances.

26. Perhaps most relevantly, despite being hired for his alleged business and financial experience and acumen, Lunny admitted to various Paragon employees that he was not proficient in QuickBooks. This led to his hiring a bookkeeper to perform the types of routine activities a CFO at a small company might be expected to handle. Lunny was authorized to hire a part-time bookkeeper for approximately 90 days but, unbeknownst and unauthorized to Paragon, retained the bookkeeper beyond that period to continue performing duties Lunny was hired to do (i.e. input information into QuickBooks).

27. Paragon had not known of Lunny's poor work ethic, lack of experience, lack of skills, and past employment history before Lunny was inserted into the company to serve as TBL's eyes and ears.

28. Lunny was eventually terminated for cause effective January 24, 2020. Lunny belatedly resigned his directorship on May 6, 2020. The circumstances for his termination will be detailed further below.

**PARAGON'S FIRST CLAIM FOR RELIEF:**

**BREACH OF FIDUCIARY DUTY**

**(AGAINST ROBERT LUNNY AND DOES 1 – 10)**

29. Plaintiffs reallege and incorporate by reference the prior and subsequent paragraphs of this Complaint.

30. As CFO/COO and a director of Paragon, Lunny owed Paragon the fiduciary duties of care and loyalty.

31. Lunny breached his fiduciary duties in a myriad of ways, including without limitation:

  a. Lunny botched payments to third-party vendors in such a manner that it created significant cash flow issues—the only solution to which was having him ask TBL for additional time and money (at high interest and under draconian terms).

b. Lunny failed to follow basic instructions to transfer over automatic bill pay and recurring payments from cancelled credit cards, leading to a key platform being offline for 48 hours.

c. Lunny was tasked with obtaining directors and officers insurance as well as employment practices liability insurance for Paragon, but he failed to do so and failed to inform Paragon that he had not applied for such insurance. This failure, whether intentional or grossly negligent, has caused significant damage to Paragon, as Paragon has been beset by a shareholder derivative lawsuit and an employment discrimination lawsuit in the months after Lunny's termination for cause.

d. Lunny was responsible for a data breach involving sensitive private information that, but for Paragon's round-the-clock remedial efforts, could have been fatal to the company and to this day has resulted in loss of trust in the company.

e. As the administrator of Paragon's health insurance plan, Lunny automatically and improperly provided employees with the top out of three tiers of coverage when the benefits package only provided the third tier (with the cost for the elective extra tiers to be paid for out of employees' salaries). These errors cost Paragon tens of thousands of dollars.

f. Although Lunny was in charge of "onboarding" new employees, meaning he was in charge of new hire paperwork, he failed to keep adequate records and, after having been terminated, appears to have deliberately destroyed or otherwise misplaced those records. Paragon's requests for these documents have been ignored, most recently on October 9, 2020.

g. Rather than find new ways to raise capital or else trim expenses, Lunny consistently turned to his personal relationship with Harvey Belfer and TBL to obtain additional usurious loans for Paragon, all of which hurt the company's bottom line and indebted it even further to TBL.

h. Although Lunny started working at Paragon on March 1, 2019, by August 2019, he had not gotten the company's records up to date in QuickBooks (for either 2018 *or* 2019). He stated that he had not done this task because he was worried about his "job security," and that his primary goal was to be seen looking busy rather than doing anything of actual substance.

i. Lunny was tasked with formalizing certain loans made by Hudson's parents and his wife's mother to Paragon, as well as certain loans made by Paragon to Hudson and his wife. This task involved reviewing financial data, researching fair interest rates and payment terms, drafting documents, and getting those documents executed. Lunny did absolutely none of these things, which has not only hindered Paragon's efforts to react to the shareholder derivative lawsuit, but may have in fact been a proximate cause of that lawsuit (e.g., the shareholder derivative lawsuit alleges that Hudson and his wife, both directors of Paragon, improperly took out undocumented loans from the company).

j. Despite being the CFO/COO, Lunny never advised Hudson and his wife from cutting business or personal expenditures. In effect, Lunny failed to perform any oversight or provide competent advice or counsel to the company and its officers. On information and belief, this was all an intentional plot between Lunny and TBL to take over control of Paragon. TBL had extended hundreds of thousands of dollars in high-interest, heavily secured loans to Paragon, and any breach of those loan agreements would have been cause for TBL to take drastic steps such as accelerate payments on the loans, foreclose on the company, sue Hudson and his wife under personal guaranties, and seize control of 100% of Hudson and his wife's shares of Paragon.

k. At all times during his employment with Paragon, Lunny had significant conflicts of interest in which he was a loyal operative of TBL, acting to provide confidential information to TBL, taking active steps to undermine Paragon, and generally doing a subpar job.

l.  Lunny admitted in official court documents that "[w]hen I left Paragon on February 14, 2020 [sic], I had a complete copy of the QuickBooks data that was accurate as of the day I left." Lunny then signed declarations in support of TBL's shareholder derivative lawsuit against Paragon in which he cited from this stolen QuickBooks data. Certainly, Lunny had no right to retain confidential Paragon material after he was terminated for cause; on information and belief, he had every intention of violating his duty of loyalty to Paragon in favor of TBL, his true master.

m.  Lunny also admitted that he routinely purchased marijuana for his underaged children. As a Canadian citizen living in the United States as a legal resident, this behavior was illegal and would also subject Paragon to potential liability and put Paragon in a very difficult position to try to replace him if he were deported.

32. As a direct and proximate result of the above-described breaches of Lunny's fiduciary duties, Paragon has suffered damages in an amount to be determined at trial, but at least $1,000,000.

33. Plaintiffs are informed and believe, and on that basis allege, that in doing the acts described above, Lunny acted with malice and with the specific intent to injure Plaintiffs. Plaintiffs therefore seek an award of punitive damages in an amount to be determined at the time of trial.

## SECOND CLAIM FOR RELIEF:
## EMBEZZLEMENT
## (AGAINST ROBERT LUNNY AND DOES 1 – 10)

34. Plaintiffs reallege and incorporate by reference the prior and subsequent paragraphs of this Complaint.

35. As CFO/COO, Lunny was in charge of administering Paragon's employee health care plan (i.e., health insurance). Lunny was responsible for selecting the specific group plan, submitting applications, inputting information, and making payments.

Paragon discovered that Lunny had, without permission, added his family as additional insureds for his employee health insurance. Paragon offers comprehensive health insurance for its employees *but not for their families*; employees are free to add family members as long as they pay for the additional premiums.

36. Lunny did not pay these additional premiums but instead used his role as health care plan administrator to surreptitiously set up Paragon to pay thousands of dollars in extra premiums for his family.

37. Lunny was not authorized to have Paragon pay for his family's health insurance.

38. In addition, Lunny charged thousands of dollars in what he claimed were business expenses to his personal American Express card. However, when asked (after his termination) to provide receipts so Paragon could reimburse him and also claim tax deductions, he stated that he could not find the receipts. He also failed to provide account statements, which Paragon could at least start to use to investigate these expenses. On information and belief, these "business expenses" were not business expenses at all, but personal expenses Lunny sought to pass off to the company.

39. As a direct and proximate result of the above-described acts of embezzlement, Plaintiffs have been damaged in an amount to be determined at trial.

40. Plaintiffs are informed and believe, and on that basis allege, that in doing the acts described above, Lunny acted with malice and with specific intent to injure Plaintiffs. Plaintiffs, therefore, seek an award of exemplary and punitive damages in an amount to be determined at the time of trial.

### THIRD CLAIM FOR RELIEF:
### CONVERSION
### (AGAINST ROBERT LUNNY AND DOES 1 – 10)

41. Plaintiffs reallege and incorporate by reference the prior and subsequent

paragraphs of this Complaint.

42. Lunny admitted to intentionally taking confidential financial information, such as QuickBooks records, from Paragon upon being terminated.

43. Lunny also intentionally failed to return Paragon equipment, such as a cell phone and laptop, which in of themselves have monetary value of approximately $1,000.00 but also, on information and belief, contain confidential and sensitive company information.

44. Paragon had a possessory interest in each of the property described above.

45. The confidential financial information converted by Lunny is worth an amount to be determined at trial, but no less than $1,000,000.

46. As a direct and proximate result of Lunny's above-described conversions, Paragon has been damaged in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF:
## BREACH OF CONTRACT (NON-DISCLOSURE AGREEMENT)
## (AGAINST ROBERT LUNNY AND DOES 1 – 10)

47. Plaintiffs reallege and incorporate by reference the prior and subsequent paragraphs of this Complaint.

48. Lunny signed a non-disclosure agreement on January 30, 2019 (the "NDA"), which prevented him from disclosing any "confidential information" of the company, whether for Paragon or any of its wholly-owned subsidiaries.

49. "Confidential information" is defined "as all manufacturing information, manufacturing materials, price lists, product costs, margins, pricing structure, marketing plans, promotional campaigns, business plan(s), financial projections, lead generation techniques, Owners, Stakeholders, Shareholders, Officers, Directors, Employees, Contractors, Associates and other information disclosed or submitted, orally, in writing, or by any other media, to the Recipient."

50. The NDA requires that confidential information must be kept confidential and private, and that the signer "shall not use the Confidential Information other than for the purposes of its business with the Company and shall disclose it only to its officers, directors, or employees with a specific need to know."

51. Furthermore, the NDA provides that the "Recipient will not disclose, publish or otherwise reveal any of the Confidential Information received from the Company to any other party whatsoever except with the specific prior written authorization of the Company."

52. Lunny did in fact receive confidential information as defined in the NDA by virtue of his position as CFO/COO and director in Paragon.

53. Lunny breached the NDA by disclosing confidential information about the company "other than for the purposes of its business with the Company," by disclosing confidential information about the company to persons other than "its officers, directors, or employees with a specific need to know," and by disclosing confidential information without obtaining the specific prior written authorization of the company.

54. For instance, Lunny provided confidential information to Harvey Belfer and Todd Belfer, neither of whom are officers, directors, or employees of the company.

55. Lunny also breached the NDA by failing to provide confidential information in his possession even after Plaintiffs' request (for instance, failing to provide copies of employment onboarding documents in response to Plaintiff's October 9, 2020 written request.)

56. Plaintiffs performed all of their obligations under the NDA.

57. Lunny was not excused from any performance or his obligations under the NDA.

58. The term of the NDA extends for three years after execution, so is effective until January 30, 2022.

59. As a direct and proximate result of the above-described breaches of the NDA, Plaintiffs have been damaged in an amount to be determined at trial, but no less than $1,000,000.

## PARAGON'S FIFTH CLAIM FOR RELIEF:
## VIOLATION OF 18 U.S.C. § 1030
## (AGAINST ROBERT LUNNY AND DOES 1 – 10)

60. Plaintiffs reallege and incorporate by reference the prior and subsequent paragraphs of this Complaint.

61. Plaintiffs are the owner of computers, which Plaintiffs use for the purpose of conducting their company business. Plaintiffs also are the owner of data that comprises confidential information as alleged above.

62. Plaintiffs provided Lunny with access to the data on its computers and computer network, to be used only for the purposes of his employment with Plaintiffs and subject to strict compliance with Plaintiffs' agreements and policies.

63. Plaintiffs are informed and believe, and on that basis alleges, that Lunny has violated 18 U.S.C. § 1030 by knowingly and without permission accessing, taking, copying, and/or making use of programs, data, and files from Plaintiffs' computers.

64. Plaintiffs have suffered damages in an amount subject to proof at trial.

65. Lunny's unlawful conduct was a substantial factor in causing Plaintiffs' harm.

66. Plaintiffs are informed and believe and based thereon allege that Lunny, in doing the things herein alleged, acted willfully, maliciously and oppressively with willful and deliberate intent to injure Plaintiffs in their business.

67. Plaintiffs have also suffered irreparable injury from these acts, and due to the continuing threat of such injury, have no adequate remedy at law, entitling Plaintiffs to injunctive relief.

## PARAGON'S SIXTH CLAIM FOR RELIEF:
## VIOLATION OF PENAL CODE SECTION 502
## (AGAINST ROBERT LUNNY AND DOES 1 – 10)

68. Plaintiffs reallege and incorporate by reference the prior and subsequent paragraphs of this Complaint.

69. Plaintiffs are the owner of computers, which Plaintiffs use for the purpose of conducting their company business. Plaintiffs also are the owner of data that comprises confidential information as alleged above.

70. Plaintiffs provided Lunny with access to the data on its computers and computer network, to be used only for the purposes of his employment with Plaintiffs and subject to strict compliance with Plaintiffs' agreements and policies.

71. Plaintiffs are informed and believe, and on that basis alleges, that Lunny has violated California Penal Code Section 502(c)(2) by knowingly and without permission accessing, taking, copying, and/or making use of programs, data, and files from Plaintiffs' computers.

72. Plaintiffs have suffered damages in an amount subject to proof at trial.

73. Lunny's unlawful conduct was a substantial factor in causing Plaintiffs' harm.

74. Plaintiffs are informed and believe and based thereon allege that Lunny, in doing the things herein alleged, acted willfully, maliciously and oppressively with willful and deliberate intent to injure Plaintiffs in their business. Plaintiffs are therefore entitled to recover punitive damages from Lunny in an amount to be determined at the time of trial.

75. Plaintiffs have also suffered irreparable injury from these acts, and due to the continuing threat of such injury, have no adequate remedy at law, entitling Plaintiffs to injunctive relief.

76.     Pursuant to California Penal Code Section 502(e), Plaintiffs are entitled to recover from Lunny their reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for relief and judgment against Defendants, as follows:

1. For compensatory damages, in an amount to be proven at trial but above the jurisdictional limit.
2. For special damages, in an amount to be proven at trial.
3. For punitive damages, in an amount to be proven at trial.
4. For interest.
5. For preliminary and permanent injunction.
6. For costs of suit.
7. For reasonable attorneys' fees incurred by Plaintiff, pursuant to California Penal Code § 502, *et seq.*
8. For such other relief as the Court may deem just and appropriate.

DATED: July 7, 2021              **WINDTBERG LAW, PLC**

By:   /s/ Marc Windtberg
      MARC WINDTBERG
      7600 N. 15th Street, Suite 150
      Phoenix, AZ 85020

      FARHAD NOVIAN
      JARED C. XU
      **NOVIAN & NOVIAN, LLP**
      1801 Century Park East, Suite 1201
      Los Angeles, CA  90067

      Attorneys for Plaintiffs PARAGON TECHNOLOGY & DEVELOPMENT, INC. and GATSBY ENTERPRISES, INC.

## DEMAND FOR JURY TRIAL

Plaintiffs PARAGON TECHNOLOGY & DEVELOPMENT, INC. and GATSBY ENTERPRISES, INC. hereby demand a jury trial in this action.

DATED:  July 7, 2021        **WINDTBERG LAW, PLC**

By:   /s/ Marc Windtberg
MARC WINDTBERG
7600 N. 15th Street, Suite 150
Phoenix, AZ 85020

FARHAD NOVIAN
JARED C. XU
**NOVIAN & NOVIAN, LLP**
1801 Century Park East, Suite 1201
Los Angeles, CA  90067

Attorneys for Plaintiffs PARAGON TECHNOLOGY & DEVELOPMENT, INC. and GATSBY ENTERPRISES, INC.